UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
RONALD SPORTEN,

                         Plaintiff,

                                              MEMORANDUM & ORDER
           -against-                          13-CV-1730(JS)(AKT)

BRIDGEHAMPTON ROAD RACES, LLC d/b/a
GOLF AT THE BRIDGE,

                         Defendant.
---------------------------------------X
APPEARANCES
For Plaintiff:      Ronald Sporten, pro se
                    P.O. Box 2876
                    Sag Harbor, NY 11963

For Defendant:      Theodore D. Sklar, Esq.
                    Esseks Hefter & Angel, LLP
                    108 East Main Street
                    P.O. Box 279
                    Riverhead, NY 11901


SEYBERT, District Judge:

           On March 28, 2013, plaintiff Ronald Sporten

("Plaintiff"), proceeding pro se, commenced this action against

defendant Bridgehampton Road Races, LLC ("Defendant" or "BHRR"),

alleging employment discrimination under the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 et seq. BHRR

has moved to dismiss the Complaint for Plaintiff's failure to file

a timely administrative complaint with the United States Equal

Employment Opportunity Commission (the "EEOC"). For the following

reasons, BHRR's motion is GRANTED.

<u>BACKGROUND</u>

Before discussing the record in this case, the Court must address whether to treat BHRR's motion as a motion to dismiss or as a motion for summary judgment because BHRR relies on materials outside of the pleadings. (See Notice of Mot. to Dismiss Compl., Docket Entry 13.) The Second Circuit has held that "[w]hen a motion to dismiss presents material outside the pleadings, a district court may convert the motion into one for summary judgment provided that the non-moving party receives notice and an opportunity to respond." <u>Cancel v. Amakwe</u>, --- F. App'x ----, 2013 WL 6800558, at *1 (2d Cir. 2013). In addition, Local Civil Rule 12.1 requires a represented party, who moves to dismiss against a <u>pro se</u> party and who relies on matters outside the pleadings, to serve and file a form notice advising the <u>pro se</u> party that the complaint may be dismissed if the <u>pro se</u> litigant does not respond to the motion "by filing sworn affidavits as required by Rule 56(c) and/or other documents." LOCAL CIV. R. 12.1.

Here, the Court will exercise its discretion to convert BHRR's motion to dismiss to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Conversion is proper because BHRR provided Plaintiff with a Local Civil Rule 12.1 notice. See <u>Hernández v. Coffey</u>, 582 F.3d 303, 308 n.2 (2d Cir. 2009) (citing cases holding that a Local Civil Rule 12.1 notice provides sufficient notice to <u>pro se</u> parties that the motion to

dismiss may be converted to one for summary judgment). In addition, in opposing BHRR's motion, Plaintiff submitted his own affidavit and sixty-seven pages of exhibits purporting to dispute BHRR's affidavits and documentary evidence, demonstrating that Plaintiff was aware of and understood the requirements for opposing a motion for summary judgment.

Since the Court has converted BHRR's motion to one for summary judgment, the following facts are drawn from BHRR's and Plaintiff's affidavits and their evidence in support. Any factual disputes will be noted.

I.  Factual Background

BHRR is a corporation that operates "The Bridge," a private golf club in Bridgehampton, New York. In support of its motion, BHRR has submitted affidavits from two of its employees: Jeffrey Warne ("Warne"), the head golf professional at The Bridge, and Natalie Terilli ("Terilli"), the Assistant Controller of BHRR.[1] [2]

---

[1] Plaintiff alleges that he "know[s] Mrs. Terilli is under duress upon creating such an absurd affidavit and did for the sole purpose to keep her job." (Sporten Aff., Docket Entry 18, ¶ 20.) The Court finds no support in the record for this conclusory allegation.

[2] Counsel for BHRR filed his own declaration (the "Sklar Decl."), BHRR's Notice of Motion to Dismiss, and Terilli's and Warne's affidavits (respectively, the "Terilli Aff." and the "Warne Aff.") as one document under Docket Entry 13. For the purposes of this Memorandum and Order, if the Court is required to refer to page numbers for any of the exhibits attached to the

BHRR employed Plaintiff as a "Caddie Master" during the golf seasons from 2005 to 2007. (Terilli Aff. ¶ 3.) As the Caddie Master, Plaintiff had a number of responsibilities, including "managing the work of the 40 or so persons who work as caddies at the Bridge during the golfing season." (Warne Aff. ¶ 3.)[3]

The Bridge is open during golf season, which starts in April and ends in October. (Terilli Aff. ¶ 2; Warne Aff. ¶ 2.)[4] Defendant first employed Plaintiff in the position of Caddie Master on June 14, 2005. (Terilli Aff. ¶ 3.) As the head golf professional at The Bridge, Warne was responsible for hiring and supervising the Caddie Master. (Warne Aff. ¶ 3.)

Defendant terminated Plaintiff at the end of the 2005 golf season and he returned as Caddie Master for the 2006 season. (Terilli Aff. ¶ 3.) Defendant again terminated Plaintiff at the

affidavits, the Court will use the page numbers supplied by the Electronic Filing System ("ECF"). For the sake of clarity, the Sklar Declaration can be found at ECF pages 4 to 5, the Terilli Affidavit at ECF pages 42 to 43, and the Warne Affidavit at ECF pages 48 to 49.

[3] Plaintiff disputes BHRR's characterization of the scope of the Caddie Master position but does not explain how Warne's characterization is inaccurate. (Sporten Aff. ¶ 27.) The Court fails to see how this dispute is material, however.

[4] Plaintiff disputes the allegation that The Bridge is closed during the offseason to the extent that it suggests that Plaintiff did not work during the off-seasons. (Sporten Aff. ¶ 26.) Again, the Court fails to see how this dispute is material.

end of the 2006 season and re-hired him as Caddie Master for the 2007 season.  (Terilli Aff. ¶ 3.)

In October 2007, Warne told Plaintiff "that he would not be re-hired as Caddie Master for the 2008 season."  (Warne Aff. ¶ 6.)  On November 12, 2007, Plaintiff filed for unemployment insurance benefits with the New York State Department of Labor (the "DOL").  (Terilli Aff. ¶ 5, Ex. A.)  The DOL subsequently sent Defendant a form advising Defendant that Plaintiff had filed for unemployment benefits and that Plaintiff told the DOL that his last day of work was November 7, 2007.  (Terilli Aff. ¶ 5, Ex. A.)[5]

Plaintiff denies both that he was terminated in November 2007 and that his last day of work was November 7, 2007.  (Sporten Aff. ¶¶ 17-19.)  He admits that Warne terminated him on October 27, 2007, but contends that Warne "changed his mind" the next day "in front of several co-workers."  (Sporten Aff. ¶ 29.)  Plaintiff claims that his "assignment" after October 2007 "included encouraging and making sure the caddies were ready to work in the 2008 season in exchange for a bonus."  (Sporten Aff. ¶ 29.)  He claims that he "used a phone that was owned by Mr. Warne and paid for with The Bridge's credit card on a monthly schedule monitored by Mrs. Terilli through February 2008."  (Sporten Aff. ¶ 7.)

---

[5] Plaintiff alleges that the form "is false in entirety" but does not explain how it is not authentic.  (Sporten Aff. ¶ 21.)

However, the record reveals that Plaintiff, on at least two occasions <u>after</u> November 7, 2007, acknowledged that he was terminated and personally attempted to persuade Warne to re-hire him as The Bridge's Caddie Master. (<u>See</u> Warne Aff. ¶¶ 7-8, Exs. A, B.) <u>First</u>, Plaintiff e-mailed Warne on January 2, 2008, stating:

> I'm requesting a meeting before you hire a new caddiemaster.
>
> With you as my mentor, our caddie program has been stronger each season. We put in countless hours of you training me and I [sic] hiring the best people that trust us. We created a work atmosphere of respect and loyalty. We have a healthy well-functioning team of caddies that support us as we thrive under everyday pressure. I talked to almost all the caddies and a few members and they want our program to stay intact.
>
> My reputation for being passionate about my work is well known. I have given you incredible loyalty and honesty to a fault. This is the most important work I've done and money is not my only goal. I love my job and I want it back.
>
> I have the willingness to change. I don't need golf privileges and I can be more strict and controlling with the caddies. I will do whatever you ask if communicated to me.
>
> . . . .
>
> The caddies and members don't want change. I've as promised encouraged all caddies to come back regardless who caddiemaster [sic] is but many are uncertain what they will do.
>
> Anyone else you hire would be a gamble.
>
> . . . .

> Once again, I'm requesting a meeting before you
> hire a new caddiemaster.

(Warne Aff. Ex. A at 51.)  <u>Second</u>, Plaintiff e-mailed Warne three weeks later on January 23, 2008, this time stating:

> I still hold Bob, the Bridge, and yourself in
> highest regard as I remain requesting a meeting
> before you hire a new caddiemaster.  News of my
> firing and the public way I was fired has spawned
> false unflattering town chatter . . . .
>
> . . . .
>
> I am in constant contact with most of the caddies
> and many quality caddies are seriously speaking to
> other caddiemasters . . . .
>
> With encouragement from caddies, co-workers and
> few members I spoke with, I am prepared and
> dedicated to use all available resources to change
> your mind and take back the job I love. . . .
>
> Again, I'm requesting a meeting to discuss . . .
> the way I was fired . . . .

(Warne Aff. Ex. B at 54.)  Warne responded by e-mail the same day, confirming his decision to terminate Plaintiff and explaining why he decided to terminate Plaintiff:

> I've had at least 20 meetings/conversations with
> you in the last 5 months.  Every conversation has
> started with you telling me how much you like
> working for me and at The Bridge.  I appreciate
> that and I'm glad you enjoyed your time here.
>
> Unfortunately, every one of these conversations
> has also illustrated why our relationship cannot
> continue as eventually you get around to telling
> me everything I did wrong to you, to include not
> enough money for how hard you worked, taking away
> "golf privileges" . . . and a variety of other
> dissatisfactions you had with me and other
> department heads and staff members.

> The job of caddiemaster is a difficult and
> demanding jobs [sic] that requires the wearing of
> many hats. . . . In my opinion you were lacking
> in proper judement [sic] on a variety of other
> issues which ultimately led me to make a change.
> As I have dug a bit deeper, I have discovered a
> few things that perhaps are symptomatic of a
> greater underlying problem. As your friend and
> former boss, I would suggest you get help with your
> gambling as it at best dictates you mood and at
> worst well. . . .
>
> You were not "publicly fired", in fact I couldn't
> have handled your end of employment any more
> subtly, gently, or generously. You simply are not
> invited back to work the 2008 season--It happens.

(Warne Aff. Ex. B at 53 (third ellipsis in the original).)

Plaintiff admits that these exchanges occurred. (Sporten Aff. ¶ 31.)

According to Plaintiff's own documentary evidence in opposition to BHRR's motion, sometime thereafter, Plaintiff retained an attorney to negotiate a severance package with BHRR. On February 21, 2008, Plaintiff's attorney wrote to Warne "to discuss the severance package that [Warne] agreed in principal to offer." (Sporten Aff. Ex. H at 32[6].) In the February 21st letter, Plaintiff's attorney further stated: "I am writing to inform you that as per Mr. Sportens [sic] most recent conversation with Mr.

_____

[6] The exhibits to the Sporten Affidavit are filed as one document under Docket Entry 19. For the purposes of this Memorandum and Order, if the Court is required to refer to page numbers of Plaintiff's exhibits, the Court will use the page numbers provided by ECF.

Rubin[7], he has been informed that although no official reason has yet been given for his termination, Mr. Rubin intends on supporting your decision to terminate his employment at The Bridge." (Sporten Aff. Ex. H at 32.)

Plaintiff claims that "the reasons for [his] termination were unclear" until May 25, 2012, when Warne allegedly confessed to Plaintiff that he "was terminated because of [his] behavior directly related to [his] disability of a Mood Disorder caused by work environment (ICD-9 code 206.90) and Adult Attention Deficit Disorder (ICD-9 code 314.9)." (Sporten Aff. ¶¶ 2-3.) However, Plaintiff also alleges that Warne "ordered" Plaintiff to miss scheduled appointments with the doctor who was treating his disabilities. (Sporten Aff. ¶ 4.)

## II.  Procedural Background

On July 6, 2012, Plaintiff filed an administrative complaint against BHRR with the New York State Division of Human Rights ("NYSDHR"), alleging employment discrimination because of disability. (Compl. at 4; Sklar Decl. Ex. 2.)  In his administrative complaint, Plaintiff alleged that Warne "told [him he] was terminated because it was 'just not working out'" but "due

_____
[7] As discussed below, Plaintiff later filed an administrative complaint with the New York State Division of Human Rights.  In the complaint, Plaintiff identifies "Robert Rubin" as the "main owner of [BHRR]."  (Sklar Decl. Ex. 2 at 31.)

to litigation for back pay; it was discovered [his] termination was due to totally [sic] because of [his] disabilities." (Sklar Decl. Ex. 2 at 26.)

On January 23, 2013, after conducting an investigation, the NYSDHR dismissed Plaintiff's administrative complaint. (Sklar Decl. Ex. 3.) On March 20, 2013, the EEOC adopted the findings of the NYSDHR and issued a right to sue letter. (Compl. at 6.)

Plaintiff commenced this action on March 28, 2013 against BHRR asserting claims under the ADA for disability discrimination. The allegations in the Complaint are sparse; however, Plaintiff attached to the Complaint a letter dated January 16, 2013 from Plaintiff to the EEOC that fleshes out Plaintiff's claims. In the letter, Plaintiff alleges that he "was terminated because [his] immediate supervisor **JEFF WARNE REFUSED TO ACCOMMODATE** [Plaintiff's] **DISABILITY** in September 2007 and October 2007." (Compl. at 7 (emphasis in the original).) On July 25, 2013, BHRR moved to dismiss the Complaint. (Docket Entry 13.) That motion is presently before the Court.

DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of Defendant's motion.

I. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v.
Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265
(1986). "In assessing the record to determine whether there is a
genuine issue to be tried as to any material fact, the court is
required to resolve all ambiguities and draw all permissible
factual inferences in favor of the party against whom summary
judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134
(2d Cir. 1997).

      "The burden of showing the absence of any genuine dispute
as to a material fact rests on the party seeking summary judgment."
Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90
S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A genuine factual issue
exists if "the evidence is such that a reasonable jury could return
a verdict for the nonmoving party." Anderson, 477 U.S. at 248.
To defeat summary judgment, "the non-movant must 'set forth
specific facts showing that there is a genuine issue for trial.'"
Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)
(quoting Anderson, 477 U.S. at 256). "[M]ere speculation or
conjecture as to the true nature of the facts" will not overcome
a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804
F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d
319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials

will not suffice." (citation omitted)); <u>Weinstock</u>, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

## II. <u>Defendant's Motion</u>

BHRR argues that Plaintiff's ADA claims are time-barred because Plaintiff did not file a timely administrative complaint with the EEOC. The Court agrees.

### A. <u>Applicable Law</u>

Before commencing suit under the ADA, a plaintiff must first file a timely administrative complaint with the EEOC. <u>See</u> 42 U.S.C. § 12117(a) (adopting for ADA claims the filing requirements for Title VII claims set forth in 42 U.S.C. § 2000e-5); <u>Thompkins v. AlliedBarton Sec. Servs.</u>, 424 F. App'x 42, 42 (2d Cir. 2011). To be timely, a plaintiff must file his complaint "within 180 days of the alleged violation unless [he] has first filed a charge with an appropriate state agency . . . ." <u>Settecase v. Port Auth. of N.Y. & N.J.</u>, 13 F. Supp. 2d 530, 533 (S.D.N.Y. 1998) (citing 42 U.S.C. §§ 2000e-5(e)(1), 12117(a)). If the plaintiff chooses to file with the state agency first, the plaintiff must file his EEOC complaint within "300 days from the date of the alleged violation or 30 days 'after receiving notice that the State or local agency has terminated the proceedings under the State or local law,'" whichever is earlier. <u>Id.</u>

The time limit to file the EEOC complaint "acts as a statute of limitations and charges filed outside of the window are barred by the failure to file a timely charge." George v. Kings County Hosp. Ctr., No. 11-CV-5543, 2012 WL 373345, at *2 (E.D.N.Y. Feb. 2, 2012). "A claim under the ADA accrues when the plaintiff 'knew or had reason to know of the injury serving as the basis for his claim.'" Thomas v. Burmax Co., No. 12-CV-6363, 2013 WL 6681616, at *4 (E.D.N.Y. Dec. 18, 2013) (quoting Harris v. City of N.Y., 186 F.3d 243, 247 (2d Cir. 1999)). The Second Circuit has held that termination is a so-called "discrete act" and that claims based on termination are barred if the plaintiff fails to file a timely administrative complaint with the EEOC. Valtchev v. City of N.Y., 400 F. App'x 586, 588, (2d Cir. 2010) (internal quotation marks and citation omitted).

However, the time limit for filing the administrative complaint under the ADA "is not jurisdictional and, like a statute of limitations, is subject to equitable tolling." Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80 (2d. Cir. 2003). Equitable tolling is available only "in [] rare and exceptional circumstance[s], in which a party is prevented in some extraordinary way from exercising his rights." Id. (internal quotation marks and citations omitted) (alterations in the original). "When determining whether equitable tolling is applicable, a district court must consider whether the person

seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Id. at 80-81 (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)).

Equitable tolling is generally reserved for cases (1) "where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period," (2) "where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant," or (3) "where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." Id. at 80-81 (internal citations and quotation marks omitted).

The filing deadline under the ADA also may be tolled under the "continuing violation" doctrine. "Under the continuing violation doctrine, 'if a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" Hudson v. W. N.Y. Bics Div., 73 F. App'x 525, 528 (2d Cir. 2003) (emphasis added) (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001)).

Thus, the Court must determine: (1) when Plaintiff's ADA claims accrued; (2) whether Plaintiff filed a timely

administrative complaint with the EEOC; and (3) if Plaintiff did not file a timely complaint, whether equitable tolling or the continuing violation doctrine applies to toll the filing deadline. Here, the Court finds (1) that Plaintiff's claim accrued on November 7, 2007, (2) that Plaintiff failed to a file a timely administrative complaint, and (3) that the filing deadline should not be tolled.

B. <u>Application</u>

Here, Plaintiff claims that BHRR violated the ADA when it failed to accommodate his alleged disabilities in September and October 2007 and then subsequently terminated him. (Compl. at 7.) Plaintiff argues that he was not terminated in 2007 and that "Mr. Warne continued to ask for [his] services well after when he says he terminated [him]." (Sporten Aff. ¶ 10.) However, viewing the evidence in a light most favorable to Plaintiff, there is no issue of fact as to when BHRR terminated Plaintiff as The Bridge's Caddie Master. The evidence shows that Plaintiff applied for unemployment benefits on November 12, 2007 and told the DOL that his last day of work was November 7, 2007. (Terilli Aff. Ex. A.) Plaintiff sent Warne two e-mails in January 2008 (1) acknowledging that he was "fired" and (2) pleading for his job back. (Warne Aff. Exs. A, B.) By his own admission, Plaintiff hired an attorney to negotiate a severance package. (Sporten Aff. ¶ 12, Ex. H.) Moreover, Plaintiff's allegation that, he has "given <u>goodwill</u>

towards the caddie program" in the year prior to filing his administrative complaint, (Sporten Aff. ¶ 10 (emphasis added)), makes clear that there no longer was an employee-employer relationship between Plaintiff and BHRR.  Thus, the Court finds that the most recent alleged discriminatory act--Plaintiff's termination--occurred on November 7, 2007.

Under the ADA, the latest date by which Plaintiff could have filed a timely administrative complaint with the EEOC was September 2, 2008.  Plaintiff did not file his administrative complaint with the NYSDHR and EEOC until July 6, 2012, nearly four years after the deadline for filing an administrative complaint. Thus, Plaintiff's ADA claims are untimely.[8]

As Plaintiff's EEOC filing was not timely, the issue then is whether an exception that tolls the deadline for filing the EEOC complaint applies.  Reading Plaintiff's opposition liberally, he appears to urge the Court to toll the filing deadline for his EEOC complaint on two grounds.  First, Plaintiff states that "[t]his action commenced on July 6, 2012 with merit upon the utterances of Jeffrey Warne on May 25, 2012 confessing, in essence, I was terminated because of my behavior directly related to my disability" and that "[p]reviously, the reasons for [his]

_____

[8] Moreover, even if the Court accepted as true Plaintiff's claim that he worked for BHRR through February 2008, (see Sporten Aff. ¶ 7), Plaintiff's administrative complaint still would be untimely.

16

termination were unclear." (Sporten Aff. ¶¶ 2-3.)  However, "[t]he law of accrual is 'concerned with a plaintiff's knowing that he has suffered an injury, not with any other facts that might support his cause of action.'"  Lugo-Young v. Courier Network, Inc., No. 10-CV-3197, 2012 WL 847381, at *5 (E.D.N.Y. Mar. 13, 2012) (quoting Heins v. Potter, 271 F. Supp. 2d 545, 554 (S.D.N.Y. 2003).  Thus, an employee has notice "of his injury on the date that the employer has clearly communicated to the employee its decision to terminate him.  It is not a prerequisite to accrual that an employee have 'information necessary to decide whether the injury is due to . . . wrongdoing by the defendant.'"  Id. (quoting Wall v. Nat'l Broad. Co., 768 F. Supp. 470, 474 (S.D.N.Y. 1991) (ellipsis in the original)).  The fact that Plaintiff was not aware, until May 25, 2012, of the alleged discriminatory animus motiving his termination is irrelevant.

Plaintiff has not presented any evidence that this is an "extraordinary" case subject to equitable tolling, and Plaintiff's own submission demonstrates that he was not acting with the reasonable diligence required for equitable tolling, as he was on notice of potential discrimination on the basis of his alleged disability as early as January 2008.  Specifically, Plaintiff claims that Warne "ordered" him to miss his scheduled doctor appointments in September and October 2007 and then terminated him.  (Sporten Aff. ¶ 4.)  Furthermore, in his January 23, 2008 e-

mail to Plaintiff, Warne suggested that he would not rehire Plaintiff in part because of Plaintiff's mood swings. (Warne Aff. Ex. B at 53.) Accepting Plaintiff's allegation that Warne "ordered" him to miss his doctor appointments in late 2007, followed by Warne's January 23, 2008 e-mail suggesting that Plaintiff's mood swings played a part in Warne's decision to terminate Plaintiff, the Court concludes that a person acting with reasonable diligence would not have waited over four years to file an administrative complaint with the EEOC.

Second, Plaintiff argues that the alleged violations continue to the present day because BHRR never provided Plaintiff with written notice of his termination as required by New York Labor Law § 195(6). (Sporten Aff. ¶ 11.) New York Labor Law § 195(6) provides:

Every employer shall:

. . . .

6. notify any employee terminated from employment, in writing, of the exact date of such termination as well as the exact date of cancellation of employee benefits connected with such termination. In no case shall notice of such termination be provided more than five working days after the date of such termination. Failure to notify an employee of cancellation of accident or health insurance subjects an employer to an additional penalty pursuant to section two hundred seventeen of this chapter.

N.Y. LAB. LAW § 195(6). It is unclear exactly what Plaintiff is arguing here but the Court surmises that Plaintiff's argument could

rest on one of two grounds. The Court rejects both of them.
First, the Court rejects any argument that BHRR's failure to
provide a written notice under § 195(6) would toll the filing
deadline because Plaintiff would be unaware that he was terminated
without receiving a written notice under § 195(6). As discussed
above, Plaintiff clearly was on notice that BHRR terminated him
from his position as Caddie Master in 2007. Second, the Court
also rejects any argument that BHRR's failure to comply with
§ 195(6) rendered Plaintiff's termination ineffective and
therefore extended the accrual date of Plaintiff's ADA claims.
See Hugo v. A & A Maint. Enter., Inc., 269 A.D.2d 357, 358, 702
N.Y.S.2d 387, 388 (2d Dep't 2000) (discussing the legislative
history of New York Labor Law § 195(6) and holding that "the
plaintiffs' contention that the defendant's failure to comply with
the written notice provisions of Labor Law § 195(6) requires a
finding that their employment was not terminated is without
merit"). Simply put, the fact that BHRR allegedly did not provide
a statutorily mandated notice is irrelevant here.

Finally, that Plaintiff's termination may have a present
negative effect on him also is irrelevant to determining whether
the filing deadline should be tolled. See, e.g., Dodson v. N.Y.
Times Co., No. 97-CV-3838, 1998 WL 702277, at *2 (S.D.N.Y. Oct. 7,
1998) ("The mere fact that past discriminatory acts have a present

effect on a plaintiff does not mean that plaintiff has demonstrated a continuing violation.").

The Court finds that Plaintiff has not demonstrated that equitable tolling or the continuing violation doctrine apply here. Accordingly, Plaintiff's ADA claims are DISMISSED as untimely.

### CONCLUSION

For the foregoing reasons, BHRR's motion for summary judgment is GRANTED, and Plaintiff's Complaint is DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

Given Plaintiff's pro se status, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis status is DENIED for purposes of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to pro se Plaintiff.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     March    10  , 2014
           Central Islip, NY